UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DHAFER PUTROUS,
22079-039,

    Defendant.

Criminal No. 03-80743

Civil No. 08-13047

Hon. Victoria A. Roberts

_____

## ORDER GRANTING EVIDENTIARY HEARING

**I. INTRODUCTION**

This matter is before the Court on Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. The Court **GRANTS** an evidentiary hearing to determine whether attorney Craig Tank ignored Petitioner's request to file an appeal of his conviction and sentence.

**II. BACKGROUND**

This is a § 2255 habeas case, in which Petitioner Dhafer Putrous alleges he was denied effective assistance of counsel during his criminal proceedings. Petitioner was represented by a series of attorneys during the course of the case. First, the Court appointed the Federal Defender Office ("FDO") to represent Petitioner at his initial appearance. The Court substituted Thomas Wilhelm in the place of the FDO on February 9, 2004; Wilhelm represented Petitioner through September 2004. On

1

October 21, 2004, Petitioner retained Dominic Sorice, who represented him for nearly 5 ½ months. On March 21, 2005, Petitioner retained John Minock; Minock represented Petitioner until June 1, 2007. On June 13, 2007, Craig Tank appeared as retained counsel; Tank represented Petitioner for the balance of the proceedings. This Motion is directed at Tank's actions during his representation of Petitioner.

On January 29, 2004, Petitioner was indicted with 11 others on eight counts: (1) conspiracy to commit federal crimes, in violation of 18 U.S.C. § 371; (2) bank fraud, aiding and abetting, in violation of 18 U.S.C. §§ 1344 and 2 (three counts); and (3) theft or receipt of stolen mail, aiding and abetting, in violation of 18 U.S.C. §§ 1708 and 2 (four counts). Petitioner was alleged to have obtained and negotiated numerous stolen checks in excess of $1 million.

Petitioner says he and his counsel signed a Rule 11 Plea Agreement ("Plea Agreement #1") on December 10, 2004, and the Government counsel signed it on December 7, 2004. According to Petitioner, under Plea Agreement #1, he was to plead guilty to counts 1, 3, 4, 7 and 8 of the First Superceding Indictment and the remaining counts would be dismissed; the agreed upon guideline range was 46 to 57 months, and restitution would be in an amount up to and including $503,448.54. Petitioner alleges Plea Agreement #1 contained no provisions that further criminal activity would be a breach of the agreement. There is no evidence of Plea Agreement #1 in the record.

On November 30, 2005, Petitioner pled guilty to Count 7 - Bank Fraud, aiding and abetting, under a different Rule 11 Plea Agreement ("Plea Agreement #2"); Petitioner and his counsel signed it on November 30, 2005, and the Government counsel signed it on November 17, 2005. In Plea Agreement #2, Petitioner admitted to

2

allegations signed in the First Superceding Indictment, as well as additional fraudulent activity which occurred between May and June 2002. The applicable guideline range was 57 to 64 months, based on a total offense level of 21 and a criminal history category IV; restitution was not to exceed $1,000,000. This agreement said that further criminal activity was a breach of the agreement; a waiver of appeal rights was included also. In exchange for Defendant's guilty plea, the Government agreed to dismiss the remaining counts at sentencing. The Court accepted Petitioner's guilty plea, but reserved its acceptance of the plea agreement. The guilty plea and plea agreement were filed under seal due to Petitioner's anticipated cooperation with the Government.

On April 19, 2006, the probation department issued its Presentence Investigation Report ("PSIR"). The guideline range in the PSIR was 70 to 87 months, based on a total offense level of 25 and a criminal history category III. The PSIR applied a lower criminal history category, but a higher loss amount and an enhancement for Petitioner's role as a leader in the offense.

On August 18, 2006, Petitioner appeared before Magistrate Steven Pepe on a new felony complaint charging Presentation and Passing of Fictitious Obligations with the Intent to Defraud, in violation of 18 U.S.C. § 514(a)(2); this conduct allegedly occurred after Petitioner's plea in this matter. As a result, the probation department updated the PSIR to reflect the new arrest and to recalculate the guideline range without the previously awarded three-point reduction for acceptance of responsibility. The revised PSIR included a new guideline range of 97 to 121 months, based upon a total offense level of 28 and a criminal history category III.

On December 7, 2006, attorney Minock filed a sentencing memorandum, asking

3

the Court to accept the guideline range in Plea Agreement #2 (corrected to 46 to 57 months based on Petitioner's lower criminal history category) and reject the guideline range in the revised PSIR.

On January 3, 2007, the Government moved to withdraw from Plea Agreement #2. On January 24, 2007, the Court entered an Order granting the motion. The Government tendered a new Rule 11 Plea Agreement ("Plea Agreement #3) to Minock on January 31, 2007. Apparently, Petitioner did not accept or reject this agreement for several months. Petitioner claims that is because he never saw Plea Agreement #3.

On May 23, 2007, Minock filed a motion to withdraw. The Court held a hearing on the motion on May 31, 2007; Petitioner attended. The Court granted the motion and ordered Petitioner to either retain new counsel by June 15, 2007, or to request appointed counsel by June 8, 2007. At that hearing, Minock acknowledged receiving Plea Agreement #3 and discussing it with Petitioner on several occasions. Petitioner did not deny this contention on the record.

On June 13, 2007, attorney Craig Tank appeared as Petitioner's new retained counsel. On July 11, 2007, Petitioner accepted Plea Agreement #3 on the record. In this plea agreement, Petitioner and Tank acknowledged that Petitioner read or had been read the agreement, that Petitioner understood and agreed to the terms, and that Petitioner had a full and complete opportunity to confer with and have all questions answered by his lawyer. On the same date, the Court accepted the new agreement and sentenced him to 121 months; judgment entered on July 19, 2007.

On July 14, 2008, Petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2255. Petitioner argues that his conviction and sentence should be vacated on

four grounds: (1) his Sixth Amendment right to effective assistance of counsel was violated; (2) his sentence was imposed in violation of the Constitution when the Government breached the plea agreement; (3) the Court lacked jurisdiction to impose the sentence; and (4) the Government's breach of the plea agreement violated his right to a fair sentencing hearing. None of these arguments was raised during the trial court proceedings or on direct appeal.

On September 2, 2008, Petitioner filed a Motion to Amend and Supplement his motion. The Court granted the Motion to Amend on September 10, 2008. To the extent the amended motion expands upon issues contained in the original petition, it relates back to the original Petition and is not subject to dismissal for untimeliness. However, as detailed below, the claims asserting new grounds for relief do not relate back and are dismissed as untimely. *See Mayle v. Felix*, 545 U.S. 644 (2005) (an amended habeas petition does not relate back when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth).

## III. STANDARD OF REVIEW

Because Petitioner's habeas petition was filed after April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 governs this case. Under 28 U.S.C. § 2255, a prisoner sentenced by a federal court "may move the court which imposed the sentence to vacate, set aside or correct the sentence" when "the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

Such motions, however, must demonstrate "the existence of a fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure" in order for relief to be obtained. *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962)).

Section 2255 requires an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Stated another way, no hearing is required if the defendant's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or are conclusions rather than statements of fact. *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). However, a § 2255 petitioner's burden "for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003).

Claims which were not raised at trial or on direct appeal are barred by procedural default unless the defendant demonstrates: (1) cause which excuses his failure to raise the issues and actual prejudice, or (2) actual innocence. *United States v. Frady*, 456 U.S. 152, 167 (1982); *Napier v. United States*, 159 F.3d 956, 959 (6th Cir. 1998); *Bousley v. United States*, 523 U.S. 614, 623 (1998). The cause and prejudice standard, however, does not apply to claims of ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim "may be brought in a collateral proceeding under §2255, whether or not the petitioner could have raised the claim on direct appeal." *Id*.

### V. APPLICABLE LAW AND ANALYSIS

### A. Waiver of Right to Appeal

Petitioner alleges the Court erred by failing to advise him of his appeal waiver. He says he did not previously raise the issue because neither Tank, nor this Court explained such right to him prior to accepting his Plea Agreement #3.

Although a defendant in a criminal case may waive the right to appeal, the waiver must be knowing and voluntary. *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2005). Rule 11 of the Federal Rules of Criminal Procedure requires the district court to determine that the defendant understands the terms of the plea agreement when waiving the right to appeal. *United States v. Almany*, 598 F.3d 238, 240 (6th Cir. 2010). It is plain error for the district court to fail to inquire into a defendant's understanding of the appellate waiver provision of his plea agreement, as required by Fed. R. Civ. P. 11(b)(1)(N). *Id.*

In *Almany*, a *pro se* defendant, who pled guilty pursuant to a plea agreement, appealed his sentence as violative of 18 U.S.C. § 924(c)(1)(A). His plea agreement provided that he waived his right to a direct appeal, but the waiver was not discussed in open court when the district court accepted the defendant's guilty plea. *Id.* The district court merely asked "[d]o you also understand that under some circumstances you or the government may have the right to appeal any sentence that I impose?" *Id.* The Sixth Circuit ruled the district court committed plain error by failing to probe the defendant's understanding of the appellate waiver provision of his plea agreement, and thus found the waiver provision unenforceable against him. The court reasoned that the district court's question did not alert the defendant that the plea agreement required him to

7

waive his right to appeal, but rather informed him that he had a right to appeal. *Id.* at 240-41.

Similarly here, at Petitioner's November 30, 2005 plea hearing, AUSA Mohsin placed the terms of Plea Agreement #2 on the record, including the appeal waiver. However, Petitioner was not asked if he understood the appellate waiver provision of his plea agreement. Again, at the July 11, 2007 plea/sentence hearing, AUSA Mohsin placed the terms of the new Plea Agreement #3 on the record, including the appeal waiver. However, the Court did not probe Petitioner's understanding of the appellate waiver provision of this plea agreement. At the conclusion of the hearing, the Court advised Petitioner, "[y]ou may have appellate rights and typically, they must be exercised within 10 days of imposition of sentence."

Under *Almany*, this error rendered the waiver provision in Petitioner's plea agreement unenforceable against him. Accordingly, the Court will consider Petitioner's claims as if there were no appeal waiver provision in Plea Agreement #3.

### B. Ineffective Assistance of Trial Counsel

Petitioner's first ground for relief is that he was denied his Sixth Amendment right to effective assistance of counsel. Petitioner claims that trial counsel was ineffective because he: (1) did not review Plea Agreement #3 with Petitioner before Petitioner signed it; (2) did not submit a sentencing memorandum on Petitioner's behalf, but instead relied on the sentencing memorandum filed by Minock; (3) did not raise objections to the PSIR or make arguments for a sentence at the low end of the guideline range; (4) did not advise Petitioner that his sentencing was scheduled for July 11, 2007; (5) did not obtain an Arabic interpreter; and (6) failed to comply with Petitioner's request

8

to file an appeal of Petitioner's conviction and sentence.

In order to sustain an ineffective assistance of counsel claim, Petitioner must prove that his attorney's performance was deficient and that he was prejudiced by the deficiency. *Mason v Mitchell,* 320 F.3d 604, 616 (6th Cir 2003)(*citing Strickland v Washington*, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls below an objective standard of reasonableness. *Id*. However, "[t]he objective standard of reasonableness is a highly deferential one and includes 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 616-617 (*quoting Strickland*, 466 U.S. at 689). To prove prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

"When deciding ineffective-assistance claims, courts need not address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004).

### 1. Failure to Review Plea Agreement

First, Petitioner argues that Tank's statement to the Court that "Mr. Putrous has now in the last few minutes signed a Rule 11 Agreement" is evidence that: (1) Petitioner did not receive Plea Agreement #3 until moments before he entered into the agreement; (2) Petitioner did not have time to read the agreement; and (3) Tank forced Petitioner to

sign the agreement. Petitioner also says that Tank falsely represented that he negotiated a sentence of 63 to 78 months with the Government and failed to get that agreement in writing. These contentions are not supported by the record.

Tank says that Petitioner already had copies of Plea Agreement #3 and the PSIR from Minock when Tank first met with him. *See* Tank Affidavit at p. 1. Tank says he discussed with Petitioner in great detail and on numerous occasions, both the PSIR and Plea Agreement #3, including the appeal waiver. *Id.* Petitioner disputes Tank's assertions, saying that Tank never visited him for more than 10 or 15 minutes, and never read or explained Plea Agreement #3 to him. *See* Putrous Affidavit at p. 2.

During the hearing on Minock's motion to withdraw, however, Minock told the Court that he met with Petitioner several times at Milan prison to discuss the pros and cons of withdrawing his plea and going to trial versus accepting Plea Agreement #3. *See* Tr. 5/31/07, p. 10. Minock said he made a recommendation to Petitioner, but sensed that Petitioner wanted a second opinion. *See* Tr. 5/31/07, p. 11. At that same hearing, the Court advised Petitioner that if he rejected Plea Agreement #3, the Court would still have to decide whether to allow him to withdraw his original plea. Petitioner said he understood. *See* Tr. 5/31/07 at p. 12. Although Petitioner now denies that Minock discussed Plea Agreement #3 and the PSIR with him, Petitioner never disputed Minock's claim during the hearing.

The Court also advised Petitioner that (1) if he did not accept Plea Agreement #3, the Government intended to indict him on additional charges; (2) he faced sentences for violations of conditions in his prior federal criminal cases; and (3) he faced an outstanding arrest warrant issued by the City of Wyandotte. *See* Tr. 5/31/07 at

10

p. 21-22. Although Petitioner now claims that he was unaware of the sentencing date on July 11, 2007, the Court specifically advised Petitioner that it had a current presentence report and was ready to sentence him if he was denied the opportunity to withdraw his plea. *See* Tr. 5/31/07 at p. 21.

At the July 11, 2007 hearing, Petitioner stated that he did not wish to withdraw his guilty plea. *See* Tr. 7/11/07 at p. 4. Assistant United States Attorney ("AUSA") Mohsin placed the terms of Plea Agreement #3 on the record, including the new agreed upon guideline range of 97 to 121 months and the waiver of appeal. *See* Tr. 7/11/2007 at p. 5-6. Petitioner agreed he signed Plea Agreement #3 earlier that day and understood that it set forth a much higher guideline range and restitution amount than Plea Agreement #2. *See* Tr. 7/11/2007 at p. 6-7. Upon questioning by the Court, Petitioner also said he read the PSIR and had no objections. *See* Tr. 7/11/2007 at p. 14. When the Court allowed Petitioner to speak before imposing sentence, Petitioner never mentioned any alleged sentence agreement negotiated by Tank and the Government. *See* Tr. 7/11/2007 at p. 12. Instead, he said, "whatever Your Honor sentence me, I'm gonna respect that and I'm gonna live with it." *See* Tr. 7/11/2007 at p. 12.

Petitioner now says he told the Court that he read Plea Agreement #3 because he "wanted to get it over with," and he was so "gripped by fear of such a huge/harsh sentence" that his decision to enter into the Plea Agreement #3 was not voluntary, but was a product of duress. However, "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Absent extraordinary circumstances, an Appellant is bound by his statements at a guilty plea hearing, and may not later attempt to prove otherwise by

affidavit. See *United States v. Fofana*, 50 Fed. Appx. 725 (6th Cir. 2002)(unpublished disposition)(citing *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).

The Supreme Court held that, to be valid, a guilty plea must be voluntarily and intelligently made. See *Brady v. United States*, 397 U.S. 742, 748-49, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. A guilty plea must be accompanied by "an affirmative showing that it was intelligent and voluntary." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). "Such a showing is generally made by the government's production of a transcript of state court proceedings to establish that the plea was made voluntarily." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749. A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the mere fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent. *Id.* at 755, 757. A guilty plea may be involuntary where it is induced by threats, misrepresentation, or promises "that are by their nature improper." *Id.*

Petitioner presents no extraordinary circumstances which persuade the Court that his statements to the Court were not true, or that his plea was induced by improper threats, misrepresentations or promises. The Court finds that Petitioner entered into Plea Agreement #3 with knowledge of the consequences.

### 2. Failure to Prepare a Sentencing Memo or Object to the PSIR

Next, Petitioner says that Tank was ineffective because he failed to prepare a sentencing memorandum or raise objections to the PSIR. However, even though Tank did not file a new sentencing memorandum, Tank specifically relied on Minock's sentencing memorandum, which included objections to the scoring in the PSIR and the increased guideline range. *See* Tr. 7/11/07 at 9. Minock's sentencing memorandum raised the same arguments that Petitioner makes here – that the Court should reject the probation department's calculations and abide by the guideline range agreed upon in Plea Agreement #2. Minock contended the offense conduct and loss amounts were the subject of negotiation between the parties, and the Court should respect their agreement. He also argued that the loss of 3 points for acceptance of responsibility, based on the new criminal charges, would potentially result in double counting and violate *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed 2d 403 (2004). Because those arguments were already made and considered by the Court, Petitioner fails to show he was prejudiced by Tank's failure to file a new sentencing memo.

Moreover, Plea Agreement #3 contained this provision which precluded Tank from arguing that a lower guideline range applied:

> B. Agreed Guideline Range
>
> There are no sentencing guideline disputes. Except as provided below, defendant's guideline range is 97-121 months, as set forth on the attached worksheets . . . Neither party may take a position concerning the applicable guidelines that is different than any position of that party as reflected in the attached worksheets, except as necessary to the Court's determination regarding subsections a) and b), above.

Therefore, Petitioner fails to show that counsel was ineffective by failing to argue that a lower guideline range should apply.

13

### 3. Failure to Obtain an Interpreter

Petitioner next argues that Tank was ineffective by failing to obtain an Arabic interpreter. Petitioner claims he could not understand the impact of his guilty plea due to his limited command of the English language.

A person who is physically present, but cannot understand the proceedings, has been denied due process. *See Drope v. Missouri*, 420 U.S. 162, 171, 43 L. Ed. 2d 103, 95 S. Ct. 896 (1973); *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966). In order to receive a fair trial and to assist in his own defense, a defendant must be able to understand the proceedings against him. *Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 899 (E.D. Mich. 2001). If a defendant does not understand those proceedings and the defendant's attorney is aware or should be aware of the defendant's inability to understand the proceedings, it is incumbent upon that attorney to act on his or her client's behalf by requesting an interpreter. *Id.*

In *Gonzalez*, the court granted the defendant's habeas petition where trial counsel failed to obtain a Spanish language interpreter for a native Spanish speaker with no formal English language education. Trial counsel used an interpreter at the preliminary examination and at several meetings with the defendant at the county jail, but failed to request one for trial. The interpreter and the defendant's appellate counsel both agreed that the defendant's ability to understand English was limited. The defendant said he did not understand the proceedings because he could not understand the language, and initially did not realize he was attending his own trial. He said he would have testified if an interpreter was available to him. The presentence report corroborated the defendant's limited education and English language ability. Under

14

those circumstances, the Court held that defendant did not receive effective assistance of counsel. *Gonzalez*, 195 F. Supp. 2d at 900.

By contrast, the record here does not show that Petitioner had insufficient English language abilities, such that he could not understand the proceedings and needed an interpreter. Although Petitioner's first language is Arabic and his only formal education was in Iraq, at the November 30, 2005 plea hearing Petitioner stated that he understood English. Throughout the proceedings, Petitioner was able to freely communicate with the Court and exhibited an understanding of the proceedings. Neither the probation officer, nor any of the attorneys who represented Petitioner, reported any difficulty with his reading comprehension or communication skills.

Moreover, at no time did Petitioner indicate that he was unable to communicate with his attorneys or understand the proceedings, nor did he request or demonstrate a need for an Arabic interpreter. Petitioner had two prior criminal convictions in this Court; the Court's docket entries reflect that no interpreter was requested in either matter. Accordingly, Petitioner failed to show that trial counsel was ineffective by failing to obtain an Arabic interpreter.

### 4. Failure to Advise of Appeal Rights and File an Appeal

Next, Petitioner says trial counsel was ineffective by failing to advise him of his appeal rights and by ignoring Petitioner's request to file an appeal on the day of sentencing. Tank denies this contention and says he specifically told Petitioner that he would not file an appeal.

The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is

15

professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

In the Sixth Circuit, the "failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment," regardless of whether the appeal would have been successful. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Carrion v. United States*, 107 F. App'x 545 (6th Cir. 2004) (applying *Ludwig* to claim of ineffective assistance of counsel for failing to file appeal despite waiver). Counsel's failure to file a notice of appeal deprives a defendant of the benefit of a lawyer in constructing potential appellate arguments. *Carrion*, 107 F. App'x at 546.

Petitioner claims Tank never discussed the appeal waiver or the filing of an appeal, either before or after sentencing. *See* Putrous Affidavit at ¶ 15. But, Petitioner contradicts himself in his Petition by alleging Tank ignored his request, on the day of sentencing, to file an appeal. *See* Dkt # 288, p. 8. This assertion supports an alternate claim that Tank disregarded Petitioner's request to file an appeal. *See Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (the interpretation of *pro se* petitions "requires active interpretation . . . to construe [the] petition 'to encompass any allegation stating federal relief.'")

Tank says he explained to Petitioner that Plea Agreement #3 contained a provision that Petitioner could not appeal his conviction or sentence if he was sentenced within the 97 to 121 month guideline range. *See* Tank Affidavit at ¶ 9. Tank denies that Petitioner asked him to file an appeal; he says he discussed with Petitioner that he would not file an appeal, and Petitioner understood and did not object. *See* Tank

16

Affidavit at ¶ 15.  Tank does not explain why he told Petitioner that he would not file an appeal, but his assertions suggest there was some discussion between the two regarding an appeal.  Based on the parties' contradictory statements, it is unclear whether Petitioner directed Tank to file an appeal.

Since the appeal waiver was ineffective, the Court concludes that whether Petitioner timely requested his counsel to file a direct appeal cannot be resolved without an evidentiary hearing.  The Court grants Petitioner's request for an evidentiary hearing on his claim that his counsel failed to file an appeal as instructed.  While a "petitioner has no absolute right to be represented by counsel on habeas corpus review," *Sellers v. United States*, 316 F. Supp. 2d 516 (E.D. Mich 2004), under Rule 8 of the Rules Governing § 2255 Proceedings, "if an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A."  Thus, the Court will appoint counsel for the evidentiary hearing.

### C. Petitioner's Last Three Claims May Be Procedurally Defaulted

Petitioner raises three remaining claims: (1) his sentence was imposed in violation of the Constitution or Laws of the United States; (2) the Court lacked jurisdiction to impose a 121-month sentence; and (3) he was deprived of his right to a fair sentencing hearing due to needless delays.  None was raised on direct appeal.  Petitioner contends these claims are not procedurally defaulted because the cause of his failure to raise them was the ineffective assistance of his trial attorney.

Presumably, as an alternate basis for finding cause, Defendant asserts that his first language is Arabic, and his reading and understanding of the English language is

17

poor. *See* Motion to Amend at p. 4. As outlined above, Petitioner has not established that educational and language deficiencies were the reasons he failed to raise his claims on direct appeal.

However, at this juncture, the Court cannot determine whether the failure to raise these claims on direct appeal was due to ineffective assistance of counsel. In *Roe*, the Supreme Court addressed the showings required for a claim of ineffective assistance of counsel based on counsel's failure to file a notice of appeal:

> counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *See* 466 U.S. at 690 (focusing on the totality of the circumstances). Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea . . . Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480.

If Petitioner establishes that his attorney acted unreasonably, he can establish his ineffective-assistance claim, and therefore can establish the requisite "cause" and "prejudice" that would excuse his procedural default. The Court reserves opinion until completion of the evidentiary hearing.

## VI. CONCLUSION

The Court **GRANTS** Petitioner an Evidentiary Hearing to determine whether

Petitioner's trial attorney, Craig Tank, provided ineffective assistance of counsel by ignoring Petitioner's request to file an appeal of his conviction and sentence. The Court appoints counsel to represent Petitioner at the evidentiary hearing.

**IT IS ORDERED.**

                                                S/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: September 10, 2010

> The undersigned certifies that a copy of this document was served on the attorneys of record and Dhafer Putrous by electronic means or U.S. Mail on September 10, 2010.
>
> s/Carol A. Pinegar
> Deputy Clerk