**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DHAFER PUTROUS,**

     **Petitioner,**

                         **CASE NO: 03-80743-3**

**v.**                           **HONORABLE VICTORIA A. ROBERTS**

**UNITED STATES OF AMERICA,**

     **Respondent.**

_____/

**ORDER**

## I.    INTRODUCTION

This matter is before the Court on Petitioner Dhafer Putrous's Motion to Vacate, Set Aside, or Correct his sentence, pursuant to 28 U.S.C. § 2255.  On March 14, 2011, the Court held an evidentiary hearing and addressed whether Petitioner's trial counsel, Craig Tank, ignored his request to appeal his sentence.  After the hearing, the Court requested additional briefing, asking the parties to address, *inter alia*, whether the appellate waiver provision of Petitioner's Rule 11 Plea Agreement was valid despite the Court's failure to probe Petitioner's understanding of the waiver at his July 11, 2007 plea/sentencing hearing.

The Court finds Petitioner's attorney, Craig Tank, was constitutionally ineffective; Petitioner's Motion is **GRANTED.**

1

## II.   BACKGROUND

### A.   July 2007 Sentencing Hearing

On July 11, 2007, the Court sentenced Petitioner to 121 months in prison following his guilty plea to one count of aiding and abetting bank fraud, 18 U.S.C. § 1344 and 2.   Craig Tank represented Petitioner at the Sentencing Hearing.   Mr. Tank was one of several attorneys to represent Petitioner throughout the proceedings.   The Government withdrew two plea agreements before Petitioner entered into the third and final agreement, which the Court accepted and used at sentencing.   There is no evidence of the first plea agreement in the record.   The second agreement calculated a sentencing guideline range of 57 to 64 months, but was withdrawn by the Government after Petitioner breached it by engaging in criminal activity.   Petitioner signed the third plea agreement on July 11, 2007, moments before the Court sentenced him.   His guideline range was 97 to 121 months.

The Government explained the substantive changes between the second plea agreement and the third.   It concluded by saying Petitioner "agrees that he has waived his right to appeal as it is detailed in Paragraph Six of the Agreement."  (7/11/07 Tr. 6). However, the Government did not explain the substance of the appeal waiver and the Court did not ascertain Petitioner's understanding of the rights he was giving up.   After sentencing Petitioner to 121 months, the Court said: "You may have appellate rights and typically, they must be exercised within 10 days of imposition of sentence.   If you cannot afford Counsel, the Clerk of the Court can provide that assistance to you...."  (*Id.* at 20).

2

**B.    Petitioner's Motion to Vacate**

On July 14, 2008 Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  He supplemented the motion on September 2, 2008.  Petitioner urged the Court to vacate his sentence on four grounds: (1) ineffective assistance of counsel; (2) the sentence was imposed in violation of the Constitution or laws of the United States; (3) the Court lacked jurisdiction to impose the sentence; and (4) the Government breached the Plea Agreement in violation of his right to a fair sentencing hearing.

Petitioner's ineffectiveness claim raised six arguments: (1) trial counsel did not review Plea Agreement # 3 with Petitioner before Petitioner signed it; (2) he did not submit a sentencing memorandum on Petitioner's behalf, relying instead on the one filed by Petitioner's former counsel; (3) he did not raise objections to the PSIR or make arguments for a sentence at the low end of the guideline range; (4) he did not advise Petitioner that his sentencing was scheduled for July 11, 2007; (5) he did not obtain an interpreter; and (6) he failed to comply with Petitioner's request to appeal Petitioner's conviction and sentence.

The Government responded on October 3, 2008.  It argued that the evidence in the record, including Mr. Tank's affidavit, shows that defense counsel was not ineffective and that Petitioner knowingly waived his appellate rights.  It said that Defendant's remaining claims are attempts to re-litigate the Government's withdrawal from the November, 30 2005 plea agreement and, as such, must be raised on direct appeal and not in a post-conviction motion.

3

**C.     Court's Order Granting an Evidentiary Hearing**

On September 10, 2010, the Court ordered an evidentiary hearing on

Defendant's motion.  The Court's order focused on Petitioner's ineffectiveness claim.

The Court rejected all grounds advanced on this claim with the exception of counsel's

failure to appeal.  The Court said this issue could not be resolved without an evidentiary

hearing.  The Court noted that the parties made contradictory statements.  Petitioner

said Mr. Tank ignored his request to appeal his sentence.  Mr. Tank, on the other hand,

stated in his affidavit that he told Petitioner he would not appeal, Petitioner did not ask

him to, and Petitioner understood, and did not object to, the appellate waiver provision

of the plea agreement.

The Court said Petitioner's last three claims may be procedurally defaulted

because he did not raise them on direct appeal.  The Court deferred ruling on these

claims; it stated if Petitioner established defense counsel was ineffective for not

appealing his sentence, he could establish the requisite cause and prejudice to excuse

the procedural default.

The Court observed that the appellate waiver provision was ineffective because

the Court did not ask Petitioner, at the sentencing hearing, if he understood that

provision. *See United States v. Almany*, 598 F.3d 238, 240 (6th Cir. 2010)  ("Rule 11 of

the Federal Rules of Criminal Procedure requires that the district court determine that

the defendant understands the terms of the plea agreement when waiving the right to

appeal."), *abrogated on other grounds by Abbott v. United States*, 131 S.Ct. 18 (2010).

The Court concluded that because the appellate waiver provision was invalid, it was

unenforceable against Petitioner.  *See id.* at 240-41.

4

### D.    March 2011 Evidentiary Hearing

The Court held an evidentiary hearing on March 14, 2011.  Court-appointed counsel, Margaret Raben, represented Petitioner.  Saima Mohsin represented the Government.  Ms. Raben called three witnesses: Petitioner, and two of his friends, Haybat Allos and Mazen Al-Saiegh.  (3/14/11 Tr. 7).  Ms. Mohsin called two witnesses: Mr. Tank, and John Minock, the defense attorney who represented Defendant before Mr. Tank.  (*Id.*).

The focus of the hearing was whether Petitioner directed Mr. Tank to appeal his sentence, or whether he reasonably demonstrated that he was interested in appealing. Ms. Mohsin also argued the appellate waiver provision of the plea agreement was valid, despite the Court's ruling to the contrary. (*Id.* at 8-9).

Petitioner testified that Mr. Tank began representing him in May 2007, after his former attorney, Mr. Minock, withdrew.  (*Id.* at 12).  Mr. Tank came to visit him once while he was incarcerated at FDC Milan and stayed for approximately twenty minutes. (*Id.* at 12-13).  Petitioner had a stack of papers he received from Mr. Minock, including Plea Agreement 3, which set a sentencing guideline range of 97 to 121 months.  (*Id.* at 14).  Petitioner did not sign the plea agreement because he was upset about the guideline range.  (*Id.* at 14-15).  Petitioner said Mr. Tank took the Plea Agreement and other papers when he left.  (*Id.* at 15).  Petitioner was moved to Wayne County Jail.  (*Id.* at 16).  Petitioner testified Mr. Tank visited him three times there.  (*Id.* at 17).  Petitioner said each time Mr. Tank arrived late in the evening and stayed for fifteen minutes or less.  (*Id.* at 17-20).

At the first two meetings Petitioner and Mr. Tank discussed moving Petitioner

5

back to Milan; they did not address the plea agreement.  (*Id.* at 17-19).  At the third

meeting Petitioner told Mr. Tank he did not want to sign the agreement because he did

not like the guideline range.  (*Id.* at 20).  Petitioner claimed Mr. Tank told him that he

could get the Government to request a lower range.  (*Id.*).  Petitioner did not see Mr.

Tank again until the day of sentencing, July 11, 2007.  (*Id.* at 21).  Prior to the

sentencing his family tried to get Petitioner's papers from Mr. Tank to look for another

attorney because Mr. Tank did not fulfill his promises to Petitioner; however, they could

not reach Mr. Tank.  (*Id.* at 22).  Although Petitioner did not plan to sign the agreement,

he decided to sign it at the last minute, while in the courtroom.  (*Id.* at 23).

Petitioner said he was "very mad" after he was sentenced to 121 months in

prison.  (*Id.* at 25).  He said he was "yelling" and "shouting" at Mr. Tank when they went

to lockup.  (*Id.* at 25-26).  He testified:

> I said one thing that the Judge said, I said she said I got 10 days if I don't
> like the sentence.  Well, I don't like the sentence.  I said what are you
> going to do about it.  He didn't say nothing.  So I went back.  I said give
> me 10 years – with all due respect for the Judge – I said she give me
> 10 years.  Why 10 years?  Why you couldn't say something to her?  I
> didn't kill nobody.  And he got a pen from his jacket and he did papers.  He
> said well, with the drugs program, with good time, with a halfway house
> you'll do less than eight years.  That was his respond (sic).  You'll do less
> than eight years and then he's gone and I never see him again.

(*Id.* at 26).  Petitioner testified Mr. Tank did not tell him there was nothing he could do or

that he gave up his appeal rights.  (*Id.* at 26-27).  Petitioner did not specifically tell Mr.

Tank he wanted to appeal.  (*Id.* at 27).

Ms. Raben asked Petitioner, "[d]uring Mr. Tank's visits with you at the Wayne

County Jail, had he said to you if you sign this Plea Agreement and you get sentenced

6

to 121 months or less, you can't appeal this?" (*Id.*).  Petitioner responded that he did

not.  (*Id.* at 28). On cross-examination, Petitioner testified Mr. Minock did not explain the

appeal waiver provision of the third plea agreement and that he did not understand that

by accepting the Agreement he was waiving his right to appeal.  (*Id.* at 40).

Mr. Minock testified next.  He said he did not recall discussing the appeal waiver

provision of the third plea agreement with Petitioner, but did not think he did because

his first step was usually to get the defendant to agree to the sentencing range and

Petitioner would not agree to the guideline range in that agreement.  (*Id.* at 69).  On

cross-examination, Mr. Minock revealed that in the Spring of 2005 there was a

cooperation agreement between Petitioner and the Government.  (*Id.* at 72-73).

Petitioner participated in two lengthy debriefings with the Government and Ms. Mohsin

indicated to Mr. Minock that she intended to a file a 5K motion for a downward

departure based on substantial assistance.  (*Id.*).  "Mr. Putrous identified for the Agents

the name of the man from whom they obtained stolen checks and [the defense] tracked

him down and found out that he was in State prison and [the defense] provided that

information." (*Id.* at 73).  "Mr. Putrous also provided information regarding that

gentleman's girlfriend who was at the time listed as a probation absconder by the

Michigan Department of Corrections, but apparently was still in the community and Mr.

Putrous had a telephone number for her." (*Id.*).  Ms. Raben emphasized that the

Government never filed a 5K motion.  (*Id.* at 74).  She argued Mr. Tank's failure to

follow up on the 5K revealed "a pattern of conduct in terms of what he fails to do after

he's retained to represent Mr. Putrous for what turns out to be only a sentencing." (*Id.*).

Mr. Allos testified next.  He was introduced to Mr. Tank through another attorney.

(*Id.* at 80-81).  Mr. Allos met with Mr. Tank twice.  (*Id.* at 81).  He testified Mr. Tank told him that he could get Petitioner a guideline range of 63 to 80 months.  (*Id.* at 82).  Mr. Allos stated after Petitioner was sentenced to 121 months, Mr. Tank told him, "don't worry about it, I'm going to appeal this and I will get it back."  (*Id.* at 82, 87-88, 95-96). He said Mr. Tank told him he had six months to appeal.  (*Id.* at 82).

Next, Mr. Al-Saiegh testified.  He said Mr. Tank told him he would appeal Petitioner's sentence.  (*Id.* at 99, 100).

The Government called Petitioner's brother, Raied Jarbo.  Mr. Jarbo testified  Mr. Tank came to his store to pick up papers Petitioner sent him.  (*Id.* at 108).  He could not remember whether Mr. Tank got the papers before or after Petitioner was sentenced. (*Id.* at 108-09, 110).  However, on cross-examination he stated it was after his brother was sentenced.  (*Id.* at 111).

Mr. Tank testified last.  He said he visited Petitioner at Milan and they discussed the computation of Petitioner's guideline range.  (*Id.* at 119-20).  Mr. Tank stated Petitioner was concerned because he understood that there would be no appellate review.  (*Id.* at 120).  Mr. Tank testified he did not take Petitioner's papers with him when he left Milan because Petitioner was still represented by Mr. Minock and he did not believe he could add value to Petitioner's case.  (*Id.* at 121).  However, Mr. Tank later agreed to represent Petitioner; he said he met with Petitioner's friends and told them he would check to make sure that Petitioner's criminal history was correctly scored; Petitioner believed it was overstated.  (*Id.* at 123).

Mr. Tank testified he met with Petitioner at the Wayne County Jail approximately five times at the end of June and beginning of July 2007.  (*Id.* at 124-25).  He said Mr.

8

Allos delivered Petitioner's paperwork to his office.  (*Id.* at 125).  Mr. Tank investigated

Petitioner's criminal history and discussed the results of his investigation with Petitioner.

(*Id.* at 128-30).  He said each meeting with Petitioner lasted approximately one hour; he

arrived around 8:00 pm and the jail closed at 9:00 pm.  (*Id.* at 129).  He testified he went

over the Rule 11 plea agreement with Petitioner "line-by-line," they discussed the

appeal waiver provision, and Petitioner was aware of the appeal waiver provision.  (*Id.*).

He advised Petitioner to accept the plea agreement.  (*Id.* at 130).  Petitioner did not at

that time.  (*Id.* at 131-32).

Mr. Tank testified Petitioner "didn't have the intention to enter into the

Agreement," however, he "changed his mind," on July 11, 2007, "moments before the

Judge arrived in the court" and signed the agreement.  (*Id.* at 132, 133).  He said he

never told Petitioner he would negotiate a plea of 63 to 78 months.  (*Id.*).

Mr. Tank stated he met Petitioner in the lockup after Petitioner was sentenced to

121 months in prison.  (*Id.* at 134).  Petitioner was "very upset and despondent," "quiet

and somber."  (*Id.*).  He testified Petitioner told him he was going to get new counsel for

his pending case.  (*Id.*).  According to Mr. Tank, Petitioner thought the sentence was

harsh, looked surprised, but did not ask him to appeal.  (*Id.* at 134-35).  Ms. Mohsin

asked Mr. Tank, " Did [Petitioner] tell you or say to you what are you going to do about

this in regards to the sentence?"  (Id. at 135).  Mr. Tank responded, "I don't recall that at

all, no."  (*Id.*).  He explained, "we had a discussion about the fact that the sentence was

within the Guideline and there was nothing that could be done."  (*Id.*).  He testified, "[w]e

talked about the fact that the sentence was within – even though it was the top of the

Guideline, it was still within the Guideline and that we were – he was stuck with it based

9

upon the provisions of the Rule 11 Agreement." (*Id.*).  Mr. Tank said Petitioner told him he was stuck with the sentence; Mr. Tank "agreed with his statement that there had been a waiver of the appeal signed." (*Id.* at 135-36).  Mr. Tank stated Petitioner did not scream at him.  (*Id.* at 136).

On cross-examination Mr. Tank admitted that he did not have any records to confirm the date of his first meeting with Petitioner at Milan.  (*Id.* at 139).  He could not remember whether he took any of the papers Petitioner had with him at that meeting, though he could not see himself taking more than "maybe a few sheets of paper."  (*Id.*).  Mr. Tank admitted that he did not know the dates of the five meetings he said he had with Petitioner at the Wayne County Jail.  (*Id.* at 141).  He said he did not recall when he told Petitioner that he had a status conference and sentencing on July 11, 2007.  (*Id.* at 144).  Ms. Raben pointed out that Mr. Tank submitted an affidavit saying he advised Petitioner to go to trial because he thought there was no benefit to signing the plea agreement.  (*Id.* at 145).  Mr. Tank responded that he advised Petitioner to go to trial when Petitioner told him he did not commit the offense.  (*Id.*).

Mr. Tank stated he was not sure if he ever contacted Mr. Minock about the case although he thought he made arrangements to pick up Petitioner's file.  (*Id.* at 146).  He was aware that Petitioner was debriefed twice by the Government and that Mr. Minock had "maybe half an inch of notes on those debriefings," but he did not feel it was important to discuss them with Mr. Minock.  (*Id.* at 146-47).  When asked if he reviewed Mr. Minock's notes, Mr. Tank responded, "I can't say that the answer is no."  (*Id.* at 147).  He could not recall whether he had the notes.  (*Id.*).  Ms. Raben asked whether Mr. Tank knew that, during the debriefings, the Government told Mr. Minock that a 5K

10

motion would be filed on behalf of Petitioner; Mr. Tank said he did not. (*Id.*).

Mr. Tank stated, on the morning of July 11 he visited Petitioner in lockup and Petitioner said he wanted to proceed to trial. (*Id.* at 149). However, later that day Petitioner said he wanted to plead guilty. (*Id.* at 150). Mr. Tank admitted he did not say much on behalf of Petitioner during sentencing. (*Id.*). Mr. Tank denied that Petitioner ever told him he didn't deserve an 121-month sentence; he did not recall whether Petitioner asked him to do something about the sentence. (*Id.* at 151-52).

When asked if he reviewed the plea agreement with Petitioner prior to the sentencing, Mr. Tank said, "I believe so but I don't know the answer to that." (*Id.* at 152). He admitted that he did not obtain the transcript of Petitioner's November 2005 plea hearing to determine whether the Court explained the appeal waiver provision of the agreement. (*Id.* at 153).

Ms. Raben sought admission of Milan and Wayne County Jail visitation records. (*Id.* at 156-57). The Court asked if attorneys are required to sign in and Ms. Raben answered yes. (*Id.* at 157-58). The Wayne County records showed that Mr. Tank visited Petitioner three times, once on June 11, 2007 at 8:00 pm, a second time on June 14 at 8:30 pm and a third time on June 19 at 8:52 pm. (*Id.* at 158-59). The Court admitted the records. (*Id.* at 160). Ms. Mohsin recalled Mr. Tank. (*Id.*). He testified he has visited several clients at the Wayne County Jail during one visit. (*Id.*). He said he often filled out a pass to visit one, but would see others during the same visit without filling out a new pass. (*Id.*). He testified the staff at the jail did not pay close attention to visits. (*Id.* at 161).

On recross-examination, Mr. Tank admitted he had to divide his time when he

11

arrived at the jail at 8:00 pm to see more than one client.  (*Id.* at 162).  He testified that

the jail "kick[s] you out" around 9:30 pm.  (*Id.*).  When asked if he ever visited Petitioner

on evenings when he filled out a pass to see someone else, Mr. Tank responded he

believed that he did but could not recall the exact dates; he said, "[i]t would have been

during the late June to early July period." (*Id.* at 163).

## III.   ANALYSIS

### A.   Standard of Review

Because Petitioner's habeas petition was filed after April 24, 1996, the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132,

110 Stat. 1214 governs this cause.  Under § 2255, a prisoner in custody under sentence

of a federal court may move the court to vacate, correct, or set aside the sentence on

grounds that "the sentence was imposed in violation of the Constitution or laws of the

United States, or that the Court was without jurisdiction to impose such sentence, or

that the sentence was in excess of the maximum authorized by law, or is otherwise

subject to collateral attack."  28 U.S.C. § 2255.  The petitioner bears the burden to show

he is entitled to relief.  *Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977).

To prevail on a § 2255 motion that alleges constitutional error, the petitioner must

establish an error "of constitutional magnitude which had a substantial and injurious

effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488

(1999).  When the motion alleges non-constitutional error, "the petitioner must establish

a fundamental defect which inherently results in a complete miscarriage of justice, or,

an error so egregious that it amounts to a violation of due process."  *Id.* (citations and

internal quotation marks omitted).  Thus, "[a] motion brought under § 2255 must allege

12

one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2)

a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so

fundamental as to render the entire proceeding invalid." *Weinberger v. United States*,

268 F.3d 346, 351 (6th Cir. 2001).

"Normally, sentencing challenges must be made on direct appeal or they are

waived." *Weinberger*, 268 F.3d at 351; *see also Regalado v. United States*, 334 F.3d

520, 528 (6th Cir. 2003) ("Section 2255 is not a substitute for a direct appeal, and thus a

defendant cannot use it to circumvent the direct appeal process.").  The general rule is

claims not raised on direct appeal may not be raised on collateral review unless the

petitioner shows cause and prejudice.  *See United States v. Frady*, 456 U.S. 152, 167-

68 (1982).  However, because a defendant claiming ineffective assistance of counsel

will often need to develop the district court record, and the district court is better suited

than the appellate court to assess the facts related to the adequacy of defense counsel,

an ineffective assistance of counsel claim may be brought in a collateral proceeding

under § 2255, whether or not the petitioner could have raised the claim on direct appeal.

*See Massaro v. United States*, 538 U.S. 500, 503-06 (2003).

     **B.**    **Effectiveness of Defense Counsel**

In *Strickland v. Washington*, the Supreme Court held that to establish ineffective

assistance of counsel, a defendant must show that: (1) counsel's performance was

unreasonable because he "made errors so serious that counsel was not functioning as

the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) the deficient

performance prejudiced the defendant.  466 U.S. 668, 687 (1984).  "When a convicted

defendant complains of ineffectiveness of counsel's assistance, the defendant must

13

show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. Further, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court warns, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'must be considered sound [ ] strategy." *Id.*

Where counsel fails to appeal when a defendant instructs him to, his conduct violates the Sixth Amendment; prejudice is presumed. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998). In *Ludwig,* the Sixth Circuit stated,

> A lawyer's failure to file a requested appeal at the behest of a defendant is particularly problematic because it does not merely deprive the defendant of effective assistance of counsel, it deprives him of the assistance of counsel altogether. Thus, the failure to perfect a direct appeal when requested by the defendant violates the Sixth Amendment without regard to the probability of success on appeal.

*Id.*

An appeal waiver provision in a Rule 11 does not impact the ineffectiveness query. *See Carrion v. United States*, 107 Fed.Appx. 545, 547 (6th Cir. 2004). *But see Sarlog v. United States*, No. 09-3033, 2011 WL 63599, at *4 (6th Cir. Jan. 7, 2011) (per curiam) (pointing out that the circuits are split on whether the failure to consult with a client about an appeal can constitute ineffectiveness even where the defendant waived his right to appeal in the plea agreement and declining to decide the issue). In *Carrion*, the Sixth Circuit held, "[t]he district court wrongly concluded that [the defendant's] appeal waiver precluded him from pursuing an appeal. [The defendant's] likelihood of

14

success on appeal is not a factor in determining whether he received ineffective assistance of counsel."  107 Fed. Appx. at 547.

The *Ludwig* court noted that a defendant must expressly request an appeal.  *Id.; see also Redalgado*, 334 F.3d at 525 (observing the difference between a defendant's express instruction to appeal and expressing a desire that an appeal be filed and stating only the former requires an attorney to appeal).  "The constitution does not require lawyers to advise their clients of the right to appeal.  Rather, the Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards that request."  *Ludwig*, 162 F.3d at 459 (citing *Morales v. United States*, 143 F.3d 94, 97 (2d Cir. 1998)).

However, in *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), the Supreme Court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal..., or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  528 U.S. 470, 480 (2000).  "Failure to consult in those circumstances constitutes deficient performance and, although prejudice is not presumed, it can be established by presenting evidence that had counsel consulted, defendant would have appealed, or that there exists nonfrivolous grounds for appeal."  *Sarlog*, 2011 WL 63599, at *4 (citing *Flores-Ortega*, 528 U.S. at 484, 486).  The Court defined consulting as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id.* at 478.

The *Flores-Ortega* Court said, in determining whether defense counsel had a

15

duty to consult with the defendant about an appeal, "courts must take into account all the information counsel knew or should have known." *Id.* at 480. It explained:

> Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.*

After the evidentiary hearing, it is undisputed that (1) Petitioner did not directly request an appeal, and (2) Mr. Tank did not consult with Petitioner about appealing his sentence. So, the question is, did Mr. Tank have reason to think that a rational defendant would want to appeal the Court's sentence, or that Petitioner reasonably demonstrated a desire to appeal?

Petitioner says he reasonably demonstrated to Mr. Tank that he wanted to appeal. The Court credits Petitioner's testimony that after he was sentenced, he told Mr. Tank he had ten days to do something if he did not like his sentence and he did not like his sentence, as well as his testimony that he asked Mr. Tank what he was going to do about it. Importantly, when asked whether this conversation occurred, Mr. Tank simply said he could not recall.

While Petitioner's testimony is inconsistent with Mr. Tank's testimony that Petitioner said he knew he waived his appeal rights and that he was stuck with his sentence, the Court does not credit Mr. Tank for several reasons. First, the record reveals a pattern of inactivity on Mr. Tank's part. He testified he did not keep records of his visits with Petitioner and could not recall exact dates. He did not have notes or

16

records of his conversations with Petitioner. Further, Mr. Tank did not contact Mr. Minock about Petitioner's case and he was not sure if he ever reviewed Mr. Minock's notes about Petitioner's debriefings with the Government. He did not know that the Government told Mr. Minock it would file a 5K motion on Petitioner's behalf. He did not review the plea hearing transcript. He could not remember if he reviewed the plea agreement with Petitioner before Petitioner signed it and was sentenced. He did not advocate on Petitioner's behalf during the sentencing or submit his own sentencing memorandum; instead he relied on Mr. Minock's memo, which was based on a guideline range that was no longer applicable.

The records of Mr. Tank's jail visits reveal that he only met with Petitioner four times prior to the sentencing, and even if the Court were to credit Mr. Tank that he did not always sign in to visit Petitioner, the time he would have spent with Petitioner during those visits would have been minimal. The evidence suggests Mr. Tank did not inform Petitioner of the July 11 status conference; Mr. Tank thought he did but could not remember when and Petitioner testified he did not. Mr. Tank did not take time on July 11 to discuss the plea agreement with Petitioner, who signed it hastily because he wanted to get the case over with and was tired of dealing with Mr. Tank.

Second, there were several inconsistencies in statements Mr. Tank made and between his statements and other evidence in the record. Mr. Tank testified he did not intend to represent Petitioner unless he felt he could add value to the case. He then said after meeting with Petitioner at Milan he did not think he could help him and was hoping Petitioner would "move on." Yet, when Petitioner's friends contacted Mr. Tank, he agreed to represent Petitioner. Mr. Tank submitted an affidavit that stated he

17

advised Petitioner to go to trial because there was no real benefit to accepting the plea agreement; however, at the evidentiary hearing Mr. Tank said he advised Petitioner to accept the agreement until Petitioner indicated he did not commit the offenses; he advised Petitioner to go to trial if he was innocent.

Mr. Tank testified he visited Petitioner at least five times at the end of June and the beginning of July; however, the Wayne County Jail records do not show any jail visits after June 19. He said each visit with Petitioner lasted approximately one hour because he always arrived around 8:00 pm and the jail closed at 9:00 pm. However, the jail records show that Mr. Tank only visited once at 8:00 pm. The other two visits were at 8:30 pm and 8:52 pm. When confronted with these records, Mr. Tank changed his testimony, saying the jail allowed attorneys to stay until 9:30 pm. Moreover, his assertion that he visited other clients at the Wayne County Jail while visiting Petitioner suggests that he did not spend an hour with Petitioner each time he visited. Mr. Tank's memory of facts – such as the material in Petitioner's file that he reviewed prior to the sentencing, the dates of his jail visits, and the extent to which he discussed the case with Mr. Minock – is limited.

Petitioner's statements were consistent and the Court credits his testimony. Petitioner admitted he did not specifically ask Mr. Tank to appeal because he was unfamiliar with the legal terminology. However, he heard the Court tell him, and the Court did indeed say, that he had ten days to act if he was dissatisfied with his sentence. This is consistent with his claim that he asked Mr. Tank what he was going to do about the sentence. He did not have any trouble recalling the facts regarding the sentencing or Mr. Tank's representation.

18

Petitioner's claim that he did not understand the plea agreement's appeal waiver provision is reasonable given the Court's failure to ensure that Petitioner understood that provision at the plea/sentencing hearing, Mr. Minock testified he did not believe he discussed the waiver with Petitioner, and Mr. Tank failed to discuss the plea agreement with Petitioner on July 11.  While the Government mentioned at the plea/sentencing hearing that Petitioner agreed to waive his appeal rights, it did not explain precisely which rights he was giving up.  The Court's inconsistent statement that Petitioner may have some appeal rights and had ten days to exercise them, could have left Petitioner understandably confused.

Finally, the Wayne County Jail records support Petitioner's testimony that Mr. Tank visited him only three times there.  In addition, Petitioner's testimony that Mr. Tank told him he could get the Government to agree to a guideline range of 63 to 80 months is supported by Mr. Allos, who said Mr. Tank told him the same thing.

Petitioner's statement to Mr. Tank that he was unhappy with his sentence, that Mr. Tank had ten days to do something about it, and what was he going to do, reasonably indicated to Mr. Tank that Petitioner was interested in appealing.  Mr. Tank had a duty to consult with Petitioner about an appeal; that is, he had a duty to advise Petitioner about the advantages and disadvantages of taking an appeal and to make a reasonable effort to discover Petitioner's wishes.  *See Flores-Ortega*, 528 U.S. at 478. Mr. Tank did not do this.

The Court concludes Petitioner established prejudice based on Mr. Tank's failure to consult with him about an appeal.  To demonstrate prejudice, Petitioner need only establish "that there is a reasonable probability that, but for counsel's deficient failure to

19

consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Petitioner testified he was very angry and upset about the sentence he received. Mr. Tank agreed that Petitioner was very upset. Petitioner was emotional on the witness stand. He said he yelled at Mr. Tank after the sentencing; he believed his sentence was unjust in light of the offense. He testified he did not believe he waived his right to appeal by signing the plea agreement and that neither Mr. Minock nor Mr. Tank explained the appeal waiver provision to him. Just minutes before his sentencing, Petitioner planned to reject the plea agreement and go to trial. He says he assisted the Government and believed that the Government had, at one point, agreed with Mr. Tank to request a sentence in the range of 63 to 80 months. The Court is convinced that even if Mr. Tank told Plaintiff that an appeal would likely be unsuccessful, Petitioner would have requested an appeal.

### C.    Validity of Appeal Waiver

The Court need not decide whether the Court's holding that the plea agreement's appeal waiver provision was invalid, was erroneous. The Government did not move for reconsideration and its contention, at the March 2011 hearing, that the holding was erroneous is untimely. *See* E.D. MICH. LR 7.1(h)(1) (a party has fourteen days after the entry of the court's order to move for reconsideration). Regardless, because Petitioner reasonably demonstrated to Mr. Tank that he wished to appeal his sentence, Mr. Tank was constitutionally ineffective for failing to consult with Petitioner about an appeal.

### D.    Petitioner's Remaining Claims

Petitioner says: (1) his sentence was imposed in violation of the Constitution or Laws of the United States; (2) the Court lacked jurisdiction to impose an 121-month

sentence; and (3) he was deprived of his right to a fair sentencing hearing due to needless delays.  No contemporaneous objection was made and these issues were not raised on direct appeal; thus, to obtain collateral relief, Petitioner must show: (1) "cause" to excuse his double procedural default, and (2) "actual prejudice" resulting from the errors.  *Frady*, 456 U.S. at 167-68.

Petitioner established defense counsel was ineffective by failing to consult with Petitioner about, and/or file, an appeal; he has shown cause to excuse his procedural default of the remaining habeas claims.  *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008) (an  ineffective assistance claim can serve as both cause and prejudice, excusing procedural default of an underlying substantive claim).  However, Petitioner has not shown "actual prejudice" resulting from defense counsel's failure to raise these issues at sentencing or on appeal.  To show "actual prejudice" under *Frady*, Petitioner must show that the alleged errors undermined the entire integrity of the sentencing proceeding. *See Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000).  He cannot do this.

First, Petitioner says his sentence violates the Constitution because the Government breached Petitioner's plea agreement by declining to reduce his total offense level by three levels for his cooperation and by applying an enhancement for leadership role without mentioning the enhancement in the agreement.  Counsel's failure to argue that the Government breached the plea agreement did not prejudice Petitioner; the argument would have failed.  The Government did not breach its third plea agreement with Petitioner, which Petitioner signed and the Court accepted.

Next, Petitioner argues this Court lacked jurisdiction to impose a sentence of 121 months rather than 53 to 61 months.  He says the Court should have given Petitioner a

21

lighter sentence because he accepted responsibility for his crime and cooperated with the Government.  This argument lacks merit.  Petitioner signed, and the Court accepted, Plea Agreement # 3, which set out a sentencing guideline range of 97 to 121 months. Petitioner breached Plea Agreement # 2 by engaging in further criminal activity and the Government withdrew the agreement.  As a result, any anticipated reductions for cooperation and acceptance of responsibility were taken off the table.  Petitioner cannot now complain that the Court lacked authority to impose a sentence within the agreed-upon guideline range.  Counsel was not ineffective for declining to make this argument.

Petitioner's final claim is that the Government's breach of the plea agreement violated his right to a fair sentencing.  As already noted, the Government did not breach Plea Agreement # 3.  Nowhere in that agreement did the Government indicate it would move for a downward departure or decline to apply an enhancement for leadership role in the offense.  Thus, counsel's failure to make this argument did not prejudice Petitioner.

### E.    Resentencing Procedure

The Court denied all of Petitioner's ineffectiveness claims except his claim that counsel was ineffective for failing to appeal.  However, Petitioner now draws the Court's attention to an issue that arose during the evidentiary hearing.  At the hearing, Petitioner's former defense attorney, John Minock, testified that Petitioner cooperated extensively with the Government, providing it valuable information regarding the offense.  (3/14/11 Tr. 72-74). The Government informed Petitioner and Mr. Minock that it intended to move for a downward departure under U.S.S.G. § 5K1.1. (*Id.* at 73).  Mr. Minock took notes during the Government's debriefings with Petitioner.  (*Id.* at 146).  Mr.

22

Tank testified he could not recall whether he reviewed Mr. Minock's notes from the debriefings, he did not talk to Mr. Minock about the debriefings, and he was not aware that the Government said it intended to file a 5K motion.  (*Id.* at 147).  Petitioner points out that Mr. Tank could have advocated for mitigation at sentencing based on Petitioner's cooperation with, and assistance to, the Government.

When a Court finds defense counsel ineffective for failing to appeal, the typical remedy is entitlement to a delayed appeal.  The Sixth Circuit explained, the district court should vacate the sentence and resentence the petitioner on the original conviction to restart the appeal clock under Fed. R. App. P. 4(b)(1)(A).  *Johnson v. United States*, 146 Fed. Appx. 4, 5 (6th Cir. June 27, 2005).  The *Johnson* court cited an Eleventh Circuit case, *United States v. Phillips*, 225 F.3d 1198 (11th Cir. 2000) with approval to explain the procedure.  The *Phillips* court instructed that when the court vacates a sentence to allow an out-of-time appeal, the same sentence should be mechanically reimposed.  However, *Phillips* was decided before the Supreme Court issued *United States v. Booker*, 543 U.S. 220, 245 (2005), making the Sentencing Guidelines advisory as opposed to mandatory and allowing the sentencing court to tailor the sentence in light of the statutory considerations of 18 U.S.C. § 3553(a). *Phillips* also came before *Pepper v. United States*, 131 S. Ct. 1229 (2011), which held that when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of postsentencing rehabilitation to support a downward variance.

The *Pepper* Court emphasized that the sentencing framework established by *Booker*, requiring consideration of the § 3553(a) factors, "applies both at a defendant's initial sentencing and at any subsequent resentencing after a sentence has been set

23

aside on appeal." 131 S. Ct. at 1241. While Petitioner's sentence was not set aside on

appeal, *Pepper*'s reasoning applies. *See, e.g.*, *United States v. Saikaly*, 207 F.3d 363,

369-70 (6th Cir. 2000) ("The same concerns apply at resentencing whether it occurs

following direct appeal or a § 2255 motion."). There is no remand order requiring the

Court to limit the proceeding, *see United States v. Moore*, 131 F.3d 595, 598 (6th Cir.

1997) ("[A] limited remand constrains the district court's resentencing authority to the

issue or issues remanded."), it is not a "sentence-modification" under § 3582(c), which

does not implicate the interests identified in *Booker*, *see Dillon v. United States*, 130 S.

Ct. 2683, 2692 (2010), and Congress places no limit "on the information concerning the

background, character, and conduct of a person convicted of an offense which a court

of the United States may receive and consider for the purpose of imposing an

appropriate sentence." 18 U.S.C. § 3661.

While 28 U.S.C. § 2255 expressly provides that "a court may entertain and

determine such motion without requiring the production of the prisoner at the hearing,"

and the Sixth Circuit has held a defendant does not have the right to allocute upon

resentencing when the court vacates a sentence under § 2255, *see Pasquarille v.

United States*, 130 F.3d 1220, 1223 (6th Cir. 1997), the Sixth Circuit warns, "it is sound

practice for a district court to permit a defendant to speak regardless of the timing of the

sentencing." *United States v. Coffey*, 871 F.2d 39, 41 (6th Cir. 1989); *see also United

States v. Mosley*, 635 F.3d 859, 865 (6th Cir. 2011) (saying it "would be wise" for district

courts to allow defendants to speak at re-sentencing hearings, regardless of whether

the hearing follows a general or specific remand); *United States v. Jeross*, 521 F.3d

562, 586 (6th Cir. 2008) ("[T]he better practice is for a district court to permit allocution

24

at any sentencing proceeding, regardless of the timing, and the district court below would have been well advised to do so in this case.").

Nothing restricts the Court from conducting a *de novo* sentencing hearing and considering evidence of Petitioner's post-sentence rehabilitation, *see Pepper*, 131 S. Ct. at 1241-42, and mitigation evidence involving the substantial assistance he provided the Government, or from allowing the Petitioner to speak on his own behalf. The Court finds a plenary proceeding particularly appropriate because Petitioner shows that defense counsel was not a zealous advocate prior to, and during, the sentencing proceeding.

Accordingly, the Probation Department is ordered to prepare a new Presentence Investigation Report ("PSIR"). The Government and Petitioner may file objections to the PSIR and the Court will schedule a re-sentencing hearing. Petitioner may attend the hearing and allocute.

Petitioner's new sentence will be effective on the date of sentencing and Petitioner will have fourteen days to appeal. Fed. R. App. P. 4(b)(1)(A)(I).

The Court appoints Ms. Raben to represent Petitioner on appeal.

## IV.    CONCLUSION

Mr. Tank rendered ineffective assistance by failing to consult with Petitioner about an appeal after Petitioner reasonably demonstrated a desire to appeal. The Court will hold a plenary resentencing hearing on **SEPTEMBER 19, 2011 AT 3:30 PM**; the Court may consider post-sentencing rehabilitation, mitigating evidence, and any applicable § 3553(a) factors to fashion a new sentence.

25

The Court **GRANTS** Petitioner's motion and vacates his sentence.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  July 6, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on July 6, 2011.

s/Linda Vertriest
Deputy Clerk